UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-24603-CMA

PARADISE TAILS, INC., *et al.*,

Plaintiff(s),

vs.

D&D SEAFOOD CORPORATION, *et al.*,

Defendant(s).

Miami, Florida

January 27, 2026

Pages 1 - 27

---

DISCOVERY HEARING
TRANSCRIBED FROM DIGITAL AUDIO RECORDING
BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): BENJAMIN J. WIDLANSKI, ESQ.
BRANDON M. SADOWSKY, ESQ.
KOZYAK TROPIN THROCKMORTON, LLP
2525 Ponce De Leon Boulevard
Miami, FL 33134
305-372-1800
bwidlanski@kttlaw.com
bsadowsky@kttlaw.com

CHRISTOPHER JOYCE, ESQ.
NEIMAN MAYS FLOCH & ALMEIDA, PLLC
100 SE 3rd Avenue
Fort Lauderdale, FL 33494
954-462-1200
cjoyce@nmfalawfirm.com

APPEARANCES (CONT'D)

FOR THE DEFENDANT(S): Keys Fisheries

JACQUELINE M. ARANGO, ESQ.
CHRISTOPHER W. BOYETT, JR., ESQ.
AKERMAN, LLP
98 Southeast Seventh Street
Miami, FL 33131
305-374-5600
jacqueline.arango@akerman.com
christopher.boyettjr@akerman.com

FOR THE DEFENDANT(S): D&D Seafood, Dennis Dopico

G. BARTRAM BILLBROUGH, ESQ.
THE BILLBROUGH FIRM
7321 SW 146 Terrace
Miami, FL 33158
305-359-8085
bart@billbroughfirm.com

TRANSCRIBED BY:

Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

Thereupon,
the following proceedings were held:

THE DEPUTY CLERK: Calling case No. 25 24603, civil, Chief Judge Altonaga. Paradise Tails, Inc., *et al.* v. D&D Seafood Corporation, *et al.*

Counsel, would you please note your appearances for the record, beginning with the plaintiff.

MR. WIDLANSKI: Good afternoon, your Honor. Ben Widlanski and Brandon Sadowsky, of Kozyak Tropin & Throckmorton, along with Christopher Joyce, of Neiman Mays Floch & Almeida, on behalf of the plaintiff and proposed class.

THE COURT: Thank you.

MS. ARANGO: Good afternoon, your Honor. Jackie Arango, with Akerman, LLP, and Chris Boyett, on behalf of defendant Keys Fisheries, and we also have a codefendant who is here.

MR. BILLBROUGH: Judge, good afternoon. Bart Billbrough on behalf of D&D Seafood and defendant Dennis Dopico.

THE COURT: Thank you.

OK. Well, go ahead and have a seat.

Let me make the observation that emails to chambers should be limited to communicating a request for a hearing and/or providing source materials as required. Any other communications that are unsolicited violate the local rules and

are disregarded.

With that, I guess I will start by asking the extent to which the dispute has changed, if at all, or if plaintiffs' relief remains a request for an order finding the defendants' objections waived as untimely.

MR. WIDLANSKI: Thank you, Judge. I do think we still need relief from the court. We are under very tight timelines set by Judge Altonaga in this case.

Our class certification experts are due at the beginning of March. We have yet to receive a single piece of paper. So we need to comply with the deadlines that the court imposed. Those deadlines required responses to discovery on the 9th of January. Self-help is not acceptable. We still don't have any paper.

We have objections and responses to the discovery requests, that were served a while ago, and obviously we haven't met and conferred on those because we got them on Friday. But we don't have any paper, we don't have any documents, and we are deeply concerned at the pace of production. We're halfway through the period of time that we have to get a class certification expert report and we don't have any paper.

THE COURT: I'm not sure that that explanation is responsive to the question that I asked, which is whether the dispute remains what it was when you noticed, that is, that

you're seeking an order that would find the defendants' objections to RFPs waived as untimely.

MR. WIDLANSKI: Yes, Judge, we are seeking that.

THE COURT: OK. And really there is no other progress that's been made and that's the request.

MR. WIDLANSKI: Well, the progress is that on Friday of last week they served their objections and responses two weeks after they were due. That is the progress, to the extent it is progress.

THE COURT: OK. OK.

Ms. Arango.

MS. ARANGO: So, your Honor, I think your question was the right question, which is whether or not the issue that was the subject of the notice of hearing is still ripe for consideration, and it's not.

We filed our responses and objections. We've outlined very specific objections to a voluminous number of discovery requests, and we stand ready to meet and confer on those objections. Frankly, I believe that if we have a proper meet and conferral we can probably resolve a lot of these issues. But this is just not ripe, it is not what's been noticed, and what I think the plaintiffs are trying to do is bootstrap substantive issues with a notice of hearing that is now moot.

The issue is, I believe, now our objections, that we can discuss with plaintiffs' counsel in a proper meet and

confer, and, as you know more than anyone, your Honor, your meet and confer -- your Rule 8 specifically requires that the parties meet and confer on specific objections and that the adequate certificate of conference almost always requires at least one, if not more, personal communications between counsel, and that just hasn't occurred.

Again, we're happy to do so. There's about 40 -- well, it's numbered 43 RFPs, but actually, there is some misnumbering. So it is probably around 39, 40.

Like I said before, we've outlined some specific objections as to documents that they request, from downstream sales, we believe there are irrelevant purchasers. We have a number of specific requests that pertain to the allegations of the amended complaint and the central issue of the amended complaint, which is that whether or not the defendants colluded for purchase prices paid to fishermen for spiny lobster and stone crabs.

So we think that we can discuss these issues in a proper meet and conferral and arrive at agreement on probably a number of issues and then come back to your Honor if there are some specific issues that we cannot arrive at agreement on.

THE COURT: OK. I don't understand your insistence that it is moot. The request is for an order determining that untimely objections are not recognized. It was untimely served. So how is it moot?

MS. ARANGO: Well, we did serve them. They exist. We have very specific objections to those very broad requests.

I would also point out, your Honor, that an amended complaint was served right after the discovery responses were due. As we explained to counsel, we needed to review the amended complaint -- it added about 52 paragraphs and a number of pages -- in order to properly respond to the amended -- to the discovery responses in conjunction with the amended complaint. The amended complaint was filed on January 14th.

THE COURT: OK. I'm really having trouble understanding your position that seems to resist acknowledging that your client failed to timely serve objections.

MS. ARANGO: Well, we did respond to plaintiffs and timely stated that we had filed a motion to stay, that our objections were contained within our motion to stay, and, in addition, this issue of waiting until the amended complaint and providing us with additional time to do so, and instead they scheduled a notice of hearing.

THE COURT: OK. Maybe I will try it this way. What would you contend was the due date for your client to file objections?

(Pause)

MS. ARANGO: We did serve our -- it is in the emails that were provided by plaintiffs' counsel -- we did serve our objection to the RFPs by the due date, but we stated that our

objections were based on the motion to stay, or at least in part on the motion to stay, that we had already filed, and we filed the motion to stay prior to the due date. I don't have the exact dates in front of me, but we filed a motion to stay prior to the due date of the objections, and then we sent an email stating specifically that we objected to the discovery and relied on the arguments raised in our motion to stay.

THE COURT: OK. Again my question is, by your count, on what date were your clients' objections to these discovery requests due?

MS. ARANGO: Just give me one moment, please.

(Pause)

MS. ARANGO: So they were served on December 10th. They were due on January 9th. Our motion to stay was filed --

(Pause)

MS. ARANGO: So I'm just looking for the date that we filed the motion to stay. I'm seeing that on Friday, January 9th, the day that the discovery responses were due, we sent an email saying, in response to plaintiffs' first request for production to defendant Key Fisheries, we've reiterated our position and objections as set forth in defendants' motion to stay, which was ECF No. 79 and which was currently pending.

I don't know the exact date of the motion to stay.

THE COURT: OK. Again, I'm trying to understand, I'm really trying to give every opportunity to understand your

position that your objections aren't waived because they were timely.

So in order for me to do that I'm essentially trying to reverse engineer by figuring out what day you would contend they were due on so I can figure out how you got there and see if I can agree with you that that argument makes sense.

MS. ARANGO: OK. So the day that they were due is January 9th.

THE COURT: Yes.

MS. ARANGO: Before that day we filed a motion to stay discovery.

THE COURT: I know.

MS. ARANGO: And on that day we responded to plaintiffs' counsel and stated that, in response to their first request for production to defendant Key Fisheries, we reiterated our position and objections set forth in our motion to stay, which was currently pending at that time.

THE COURT: OK. So you served objections on the 23rd of January, right?

MS. ARANGO: Yes.

THE COURT: Does it sound right that the motion to stay was denied on January 13th?

MS. ARANGO: It's possible, yes. If your Honor has that in front of you, then yes.

THE COURT: So to understand your position that you

timely served objections, I'm trying to make sense of -- you concede they were due on the 9th. Your motion to stay has been denied. You don't move for an extension of time. Ten days later you serve this document.

MS. ARANGO: Well, we did respond to plaintiffs and told them that we would serve our responses by January 23rd, because the responses, I believe, were then due within 15 days of the denial of the motion to stay. No.

(Pause)

MS. ARANGO: So we did email the plaintiffs and we asked if they would allow an extension of the time to respond/object. We said we would be available for a meet and confer to discuss our extension of time.

We did have a meet and confer and we said that we would respond on January 23rd, which is what we did.

THE COURT: OK. That answer suggests that the plaintiffs agreed to extend the time for you to object until the 23rd.

Is that what you are representing was your understanding?

MS. ARANGO: That is my understanding based on these communications and based on my understanding at that time.

THE COURT: At that time.

MS. ARANGO: Yes.

THE COURT: Does that mean that -- which email are you

reading from?

MS. ARANGO: So I'm reading the January 15th email at 3:17 p.m. from Richard Brosnick to Brandon.

As we explained, there was really no intelligible way to respond until we received the amended complaint and understood what all of the allegations in the amended complaint were and how the existing discovery requests related to the allegations of the plaintiffs' complaint.

THE COURT: This is the same email that was attached to source materials?

MS. ARANGO: Yes.

THE COURT: Highlight for me the language that you would contend expresses the plaintiffs' agreement.

(Pause)

MS. ARANGO: So the earlier email from Brandon, which was on Thursday, January 15th -- excuse me. That was the next -- yes, the earlier email on January 15th, which we responded to. At the end: We planned to contact Magistrate Judge Louis' chambers by no later than tomorrow to request a discovery hearing, consistent with the procedures. Please let us know your availability for a call today, for an in-person meet and confer, as well as two dates for a discovery hearing in the next 14 days.

I'm sorry. Just give me a minute.

(Pause)

MS. ARANGO: What Mr. Boyett is telling me is that we did have a call with plaintiffs' counsel where it was represented if this issue gets mooted before the judge's hearing, then, we'll deal with that at the time. But there was an understanding, at least from those communications, that we would be responding by the 23rd and that our response could moot the necessity of a hearing. I don't want to say it was an agreement, but it was what we understood.

THE COURT: OK. I would say it took us about 20 minutes to get to that point.

There was no agreement. The responses are blatantly late, unexplained late. They are not tethered even to any event in the case that you picked the 23rd to file them. And I don't understand the resistance to just admitting that and then saying, OK, now what. It just also highlights that perhaps we need to make better use of time in this case.

The letters also said that we would meet and confer by the 26th. Did that happen?

MS. ARANGO: We filed our objections on the 23rd and there was no request to meet and confer about our objections on the 26th.

THE COURT: OK. Because the objections also don't really say a whole lot of anything. These are all general objections.

MS. ARANGO: Your Honor, I --

THE COURT: What is the most specific objection that you've asserted?

MS. ARANGO: OK. So let's provide you with a few.

THE COURT: I would just pick your best one.

MS. ARANGO: OK. Well -- OK.

THE COURT: Is it also true that not a single document's been produced yet?

MS. ARANGO: We have not produced any documents.

THE COURT: Not even in response to initial disclosures?

MS. ARANGO: We provided initial disclosures.

THE COURT: You provided documents with initial disclosures?

MS. ARANGO: No. No. No documents.

Can I refer you to -- this is an example of -- OK. So request for production No. 4: All documents and communications, including structured data, reflecting your revenues, costs, including overhead, cost of goods sold, fuel, ice, bait, labor, packaging, and gross and net profits relating to the relevant products, including financial statements, profit-and-loss statements, ledgers, and any cost or margin analysis and all documents reflecting any allocation of overhead, labor, or processing costs among affiliates or related entities.

So we had defined the basis for our time scope

objection. We had defined the basis for our downstream sales objections.

In this case, as you're aware, the allegations are that the defendants colluded and paid fishermen an agreed-upon price for these two relevant products -- spiny lobster and stone crab -- and what the defendant might have reaped in sales to either third-party wholesalers or -- I'm not sure if you're aware, but Key Fisheries has a restaurant in Marathon that is connected to its docks. So this would be -- meet the downstream sales objection and irrelevant purchasers' objection, which we explained was the purchasers of -- you go to the restaurant and all the restaurant patrons buy lobsters or stone crabs and it would be all of these documents that basically have to do with every aspect or related to Key Fisheries' business.

So I think we've outlined very clearly what our objections are, the basis for, the specific basis for the objection, and, like I said earlier, we would be happy to discuss it with them and try to limit and focus on what is at issue here. But I think this objection pretty much is very clear and very specific.

THE COURT: But to be clear, the documents that would fall within the scope of what you have deemed responsive were not in fact produced.

MS. ARANGO: No, they have not been, in fact, produced

because we haven't decided -- we have not had a proper meet and confer to go over, do you really want the sales data over the course of 16 years to restaurant patrons in Key Fisheries' restaurant. I think if we had that ability, we could talk about it and meet and confer.

THE COURT: I'm not sure that I understand the -- the predicate of what you are saying seems to be that when the plaintiff comes to you, then you will engage it further in a meet and confer.

MS. ARANGO: Well, the plaintiffs have noticed this hearing, I believe, before we had an opportunity to have a proper meet and confer.

THE COURT: If the subject of the hearing related to either the scope of your production or your objections as opposed to the timing.

MS. ARANGO: Well, I think that we are now at the point where we have laid out very clearly for plaintiffs what our objections are, and we're trying to do this efficiently.

I would also point out that in the amended complaint plaintiffs served an affiliate, Ernest Hamilton. They haven't served discovery on Ernest Hamilton, but it would certainly make sense to coordinate so that we are not disrupting the client's business two times and having to incur costs, double the costs.

Again, it would just make sense for us to discuss and

try to efficiently streamline this and even the type of discovery that is being requested. For instance, data. That's already existing. That needs to be downloaded. We can discuss that and provide that within the right time frame, limited to the relevant products, right. But communications that we need to review, day-to-day communications between employees of Key Fisheries, we'll need to review, and we can discuss search terms and the parameters of that review.

THE COURT: Have you identified custodians?

MS. ARANGO: Well, we have an ESI protocol, which we've -- I think we sent to you our draft last week, which would identify -- did we identify the custodians? Yes.

THE COURT: How many email custodians did you identify?

MS. ARANGO: Let's just check and see.

(Pause)

MS. ARANGO: We provided our ESI protocol, but it did not list or require certain names of custodians. But, again, those are topics that we would be happy to discuss with the plaintiffs.

THE COURT: OK. All right. It is not going to be -- this is not a workable way of approaching ESI or discovery in this case.

All right. Here's what we are going to do. I am going to put you on a revolving calendar. We can do it

remotely if we get to a place where there is a level of preparedness before the hearings that I don't think you need to see each other in person, but out of the gate it will be in person.

You are so far behind the ball of where you need to be in terms of getting your document production started. I don't think that if you needed to you could today substantiate even the objections that you did identify here. If you haven't identified the custodians, then you don't have any sense of the volume of the data that goes back to 2010 to assert a burdensome objection.

Am I wrong?

MS. ARANGO: Well, I mean, I think we can -- you're correct about that.

THE COURT: OK. So wait. Hang on. I want you to have the choice to say less because I would rather just right the ship.

MS. ARANGO: OK.

THE COURT: I would rather if you did not deprive yourself of the forthcoming opportunity to amend these objections by saying something that we can't later fix. OK.

MS. ARANGO: OK.

THE COURT: The reality is the objections are -- I'm sorry -- the requests are very broad, and I think they probably anticipated some measure of conferral, because when some

requests are made, you do so in a vacuum without knowing what the defendants' documents look like. But it was a choice to just not timely serve objections or to undertake to start identifying your custodians or the volume of your data or to test any of this and to assert a lot of general objections, none of which could be substantiated about having done any of that work in advance.

So none of the objections that I read in that, I think, 17-page document could be substantiated, but that doesn't mean that the cost of this litigation is going to just spiral.

What I am inclined to do, and you haven't even had a chance to address me really, as I've said, is to set you on a schedule to come back probably in two-week intervals until I see that the defense production is up and running.

It would be my inclination to give them seven days to provide meaningful, specific objections, which will have to be informed, both by speaking to your client and probably speaking to someone on the plaintiffs' team about what is really at issue. But you cannot do it without first informing yourself about what your client has and what limits they have. I mean, it may be a very real specific objection that you can't go back to 2010 because they don't have the computers from 2010, but as you sit here if you don't know that, we can't just assert it in a vacuum.

So while I am sensitive to the time constraints and what another seven days might mean and you have a very well-placed position that the objections are waived, but they're not real objections anyway.

So the bottom line is we just need to get the production started, and you don't really have an interest in seeing 5 million irrelevant documents.

MR. WIDLANSKI: I do not, Judge.

THE COURT: If you want to be heard and tell me that I am wrong to give them seven days to fix this, here's your chance.

MR. WIDLANSKI: Judge, I think that that's fine and I hope -- I have the greatest respect for Ms. Arango. I think she is a wonderful attorney. I think Akerman is a wonderful firm. I'm sure that we are going to be cooperative and move the ball towards the goal with your Honor's guidance.

THE COURT: You don't need a lot of my guidance. I think you just need check-ins. That is, I mean literally, what I will be doing with you, but you guys have to do all the work.

MR. WIDLANSKI: We plan on it, Judge.

THE COURT: I know. I didn't mean otherwise. I am not here to take any credit for it. I just want to keep you guys moving, right.

Judge Altonaga has given you deadlines and I wouldn't anticipate that they're going to change.

MR. WIDLANSKI: I am well aware of that, Judge, and that is why we're here.

THE COURT: So I mean, Ms. Arango, if you are looking for or suggesting a different path forward, I want to hear it, but it is why I asked the questions that I did so I can try and get a sense of whether or not, despite what source materials I'm seeing, maybe the work is actually being done and it's just not obvious from the pleadings. I don't think I'm wrong. So my suggestion here is seven days to correct the objections that have been served.

Any time, in response to a specific request, you refer back to a boilerplate objection, that's a general objection and they are just disregarded. On the next draft -- and there is also no benefit to noting that you object on the grounds of privilege because that is a privilege log.

If, for example, after consulting with your client you're able to identify a category of documents that either no longer exists or has nothing to do with this side of the business or implicates special confidentiality concerns, those are specific enough objections that you will be able to substantiate, please raise them. Then the plaintiffs' team has an opportunity to say, you know what, you're right, let me withdraw that portion of the request and let's keep whittling this down, because the fewer documents that are produced, the less expensive it is for both of you.

OK. So anyway, this is, like I said, your chance to tell me that you see a different path forward. Otherwise, I would make your amended responses due on the 3rd and set you for our first check-in the week of the 9th, either that Tuesday or Wednesday, the 10th or 11th, to confirm that custodians are identified, searches are under way, paper documents have been isolated, custodians have been questioned.

I'm sure that there will be other examples, but out of the gate those are the most important things.

If there's going to be an ESI protocol, these are the things that have to be done. You are testing search terms, whatever the case may be.

Anyway, I will stop talking. Your position.

MS. ARANGO: Your Honor, I agree. I don't think -- I think that that's reasonable. We can file our amended responses. We are working on an ESI protocol presently. I think we can provide a protocol upon which we can both work with, and we can work with --

THE COURT: Is there any disagreement at this point about the ESI protocol that's been proposed?

MR. WIDLANSKI: We proposed it to them, Judge, and then they sent us red lines.

We have to -- we have a large team and we are going through it, but I haven't seen anything that jumps out at me right now that says it's a problem.

THE COURT: OK.

MR. WIDLANSKI: Obviously, we will get back to them on that immediately.

THE COURT: Are you both using vendors?

MR. WIDLANSKI: We will probably do it in-house through Relativity.

THE COURT: Oh, you have Relativity in-house?

MR. WIDLANSKI: Yes, Judge.

THE COURT: Do you have an ESI vendor?

MS. ARANGO: We have an in-house vendor that uses Relativity.

THE COURT: OK.

MR. WIDLANSKI: We may do TAR review on our side, Judge. That depends on the volume, obviously.

THE COURT: Practice.

MR. WIDLANSKI: It depends on the volume.

THE COURT: Right.

MS. ARANGO: We would do that as well.

MR. WIDLANSKI: We would object to layering of search terms on top of TAR, but we're open to that discussion with Ms. Arango.

The only concern I had, Judge, with the plan you laid out is the timing, which is that if, and I don't think it will, if things go poorly next week, then we are not in front of your Honor until the following week. We are then three weeks away

from when our class cert. expert report is due.

THE COURT: Your class cert. expert?

MR. WIDLANSKI: Yes. It's due March 2.

THE COURT: Then don't you think, just putting it out there --

MR. WIDLANSKI: Yes, Judge.

THE COURT: -- it would behoove you to identify to the defendants those documents that you and your expert would prioritize above all others?

MR. WIDLANSKI: Absolutely, Judge, and we're happy to do that. I guess all I was saying --

THE COURT: By way of example, do you have some idea at this point as to which categories of documents or which RFPs your expert has either identified or from your experience you know that you will need?

MR. WIDLANSKI: Judge, I think requests 2, 3, 4, and 5 are probably the most important for us for class cert., and probably 7, which is actually 6 because I believe it is misnumbered. Those are the ones dealing with the pricing of these, the pricing and even time of the products.

To go back to my only concern, Judge, I think next week is fine. I have no issues with that. My question, my ask would be, could we have the check-in next week as opposed to an additional week, just so that if there are any issues, we can nip them in the bud right away and we don't lose an additional

week of our already truncated timeline.

THE COURT: I think that the answer is we can -- I want to make sure that we are making good use of our time together because if they're producing their amendment to you on the 3rd -- yes. OK. We could do Friday afternoon, because by that time I would anticipate you both speaking probably either Wednesday or Thursday to have a joint handle on what is happening. OK. But I couldn't do it much earlier than that.

MR. WIDLANSKI: OK, Judge.

THE COURT: You prompted me with a question, but I forgot what it was. I forgot what it was. It will come back.

Yes. OK. That's fine. So we can do it on Friday the 6th instead of the week of the 10th. And requests, you said, 2, 3, and 5?

MR. WIDLANSKI: 2, 3, 4, 5, and the misnumbered 7. So 2, 3, 4, 5, and true 6.

THE COURT: OK.

MR. WIDLANSKI: I'll go through them again and if there are additional ones, I'll flag those for Ms. Arango by email.

THE COURT: OK. This is going to take a little bit, I think, more of a lift on your end. I understand -- and I don't mean to admonish you. It is, I don't think, your fault that it is January 27th and you are in this position in terms of where we are in conferral.

No. 7, misnumbered 7, whatever we want to call it, the request for all communications between the defendant and fishermen regarding, essentially, price fixing, how exactly are you proposing the defendants look for that?

MR. WIDLANSKI: Judge, I think your Honor nailed it earlier. These are requests that the parties negotiate through conferrals. You're absolutely right, that is the process. We all are familiar with it. It was a process we were happy to participate in prior to January 9th, and we are happy to participate in it today.

So I anticipate having a discussion with Ms. Arango and her team about the best way to do that, to get the materials that we need to satisfy the court's deadlines.

THE COURT: With respect to the initial disclosures, were fishermen identified as witnesses?

MR. WIDLANSKI: I mean, I believe clients were, Judge.

You mean our initial disclosures or defendants?

THE COURT: No. I'm asking you if to your satisfaction the defendants have identified the fishermen with whom they communicate that would inform RFP No. 7.

MR. WIDLANSKI: Judge, I'm not prepared to answer that. I don't have an answer for it.

THE COURT: OK. I would at least note that initial disclosures require the disclosure of witnesses not only on whom you intend to rely but who have material information about

the claims or defenses in the case.

So if there's a deficiency, if there is a deficiency in initial disclosures, they should also be corrected, and that is a bilateral obligation, obviously, also by the 3rd.

OK. I'm going to say less, then, because you guys have a lot of work to do, particularly on the defense side, as you need to have a handle on your custodians. You need to know who these witnesses are in order to be interviewing them and collecting documents and pulling together meaningful search terms.

Unless anybody has anything else, I will see you on the 6th at 2 p.m.?

MR. WIDLANSKI: Judge, I will not be here. I will be out of town then, but I am sure my colleagues will be able to handle because I am confident --

THE COURT: OK.

MR. WIDLANSKI: -- that we will make a significant amount of progress.

THE COURT: OK. All right. The kinds of metrics that that -- that is the kind of metrics that I'm looking for, that obviously the custodians have been identified and interviewed, but some manner of production has started and at least tested, so that I assume within your ESI protocol you've decided the exact format of the digital data you intend to produce, but that it's come across, there is no problem with the links,

whatever the case may be, and just logistically we are up and off the ground. And if that is the case, then maybe we don't need to see each other again until after your motion is filed, but we have to know that the mechanics are up.

It is my expectation that at that hearing, to the extent that because you've already done that work you have objections with respect to burden, scope, or lack of specificity, you are able to articulate at that hearing and I can either agree with you or ask the plaintiff why isn't what they're saying good enough. So that is the reason I want to check in with you next Friday so that the production doesn't get out of control. OK.

MR. WIDLANSKI: Thank you, Judge.

THE COURT: See you in a week and change.

MR. WIDLANSKI: We appreciate your time.

THE COURT: Thank you for your appearance this afternoon.

MS. ARANGO: Thank you, your Honor.

(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

February 5, 2026

s/ Joanne Mancari
Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

MR. BILLBROUGH: [1] 3/17
MR. WIDLANSKI: [29]
MS. ARANGO: [41]
THE COURT: [63]
THE DEPUTY CLERK: [1] 3/3

1

100 [1] 1/18
10th [3] 8/13 21/5 24/13
11th [1] 21/5
1200 [1] 1/19
13th [1] 9/22
14 [1] 11/23
146 [1] 2/9
14th [1] 7/9
15 [1] 10/7
15th [3] 11/2 11/16 11/17
16 [1] 15/3
17-page [1] 18/9
1800 [1] 1/15

2

20 [1] 12/9
2010 [3] 17/10 18/23 18/23
2026 [2] 1/5 28/8
23rd [7] 9/18 10/6 10/15 10/18 12/6 12/13 12/19
24603 [1] 3/3
25 [1] 3/3
25-CV-24603-CMA [1] 1/2
2525 [1] 1/14
26th [2] 12/18 12/21
27 [2] 1/5 1/7
27th [1] 24/24

3

305-359-8085 [1] 2/10
305-372-1800 [1] 1/15
305-374-5600 [1] 2/5
33131 [1] 2/5
33134 [1] 1/14
33158 [1] 2/10
33494 [1] 1/19
39 [1] 6/9
3:17 [1] 11/3
3rd [4] 1/18 21/3 24/5 26/4

4

40 [2] 6/7 6/9
43 [1] 6/8

5

52 [1] 7/6
5600 [1] 2/5

6

6th [2] 24/13 26/12

7

7321 [1] 2/9
79 [1] 8/22

8

8085 [1] 2/10

9

954-462-1200 [1] 1/19
98 [1] 2/4
9th [7] 4/13 8/14 8/18 9/8 10/2 21/4 25/9

A

ability [2] 15/4 28/5
able [4] 20/17 20/20 26/14 27/8
about [12] 6/7 7/6 12/9 12/20 15/5 17/14 18/6 18/19 18/21 21/20 25/12 25/25
above [2] 23/9 28/6
above-entitled [1] 28/6
absolutely [2] 23/10 25/7
acceptable [1] 4/13
accurate [1] 28/4
acknowledging [1] 7/11
across [1] 26/25
actually [3] 6/8 20/7 23/18
added [1] 7/6
addition [1] 7/16
additional [4] 7/17 23/24 23/25 24/19
address [1] 18/13
adequate [1] 6/4
Adjourned [1] 27/19
admitting [1] 12/14
admonish [1] 24/23
advance [1] 18/7
affiliate [1] 15/20
affiliates [1] 13/23
after [4] 5/8 7/4 20/16 27/3
afternoon [5] 3/8 3/13 3/17 24/5 27/17
again [7] 6/7 8/8 8/24 15/25 16/18 24/18 27/3
ago [1] 4/16
agree [3] 9/6 21/14 27/9
agreed [2] 10/17 14/4
agreed-upon [1] 14/4
agreement [5] 6/19 6/21 11/13 12/8 12/11
ahead [1] 3/21
AKERMAN [3] 2/4 3/14 19/14
akerman.com [2] 2/6 2/6
al [4] 1/3 1/6 3/4 3/5
all [15] 4/3 11/6 12/23 13/16 13/22 14/12 14/13 16/21 16/24 19/19 23/9 23/11 25/2 25/8 26/19
allegations [4] 6/13 11/6 11/8 14/3
allocation [1] 13/22
allow [1] 10/11
ALMEIDA [2] 1/18 3/11
almost [1] 6/4
along [1] 3/10
already [4] 8/2 16/3 24/1 27/6
also [10] 3/15 7/3 12/15 12/17 12/22 13/6 15/19 20/14 26/3 26/4
Altonaga [3] 3/4 4/8 19/24
always [1] 6/4
am [9] 16/24 17/12 18/12 19/1 19/10 19/21 20/1 26/14 26/15
amend [1] 17/20
amended [13] 6/14 6/14 7/3 7/6 7/7 7/8 7/9 7/16 11/5 11/6 15/19 21/3 21/15
amendment [1] 24/4
among [1] 13/23
amount [1] 26/18
analysis [1] 13/22
another [1] 19/2
answer [4] 10/16 24/2 25/21 25/22
anticipate [3] 19/25 24/6 25/11
anticipated [1] 17/25
any [16] 3/24 4/14 4/18 4/18 4/22 12/12 13/8 13/21 13/22 17/9 18/5 18/6 19/22 20/11 21/19 23/24
anybody [1] 26/11
anyone [1] 6/1
anything [3] 12/23 21/24 26/11
anyway [3] 19/4 21/1 21/13
appearance [1] 27/16
appearances [3] 1/11 1/21 3/6
appreciate [1] 27/15
approaching [1] 16/22
ARANGO [8] 2/3 3/14 5/11 19/13 20/3 22/21 24/19 25/11
are [58]
aren't [1] 9/1
argument [1] 9/6
arguments [1] 8/7
around [1] 6/9
arrive [2] 6/19 6/21
articulate [1] 27/8
as [19] 3/24 4/5 5/2 6/1 6/11 7/5 8/21 11/4 11/22 11/22 14/3 15/14 18/13 18/23 22/18 23/13 23/23 25/15 26/6
ask [2] 23/22 27/9
asked [3] 4/24 10/11 20/5
asking [2] 4/2 25/18
aspect [1] 14/14
assert [3] 17/10 18/5 18/24
asserted [1] 13/2
assume [1] 26/23
at [25] 4/3 4/9 4/19 6/4 6/19 6/21 8/1 9/17 10/22 10/23 11/2 11/18 12/4 12/5 14/19 15/16 18/19 21/19 21/24 23/13 25/23 26/12 26/22 27/5 27/8
attached [1] 11/9
attorney [1] 19/14
audio [2] 1/9 28/5
availability [1] 11/21
available [1] 10/12
Avenue [1] 1/18
aware [3] 14/3 14/8 20/1
away [2] 22/25 23/25

B

back [8] 6/20 17/10 18/14 18/22 20/12 22/2 23/21 24/11
bait [1] 13/19
ball [2] 17/5 19/16
bart [2] 2/11 3/17
BARTRAM [1] 2/8
based [3] 8/1 10/21 10/22
basically [1] 14/14
basis [4] 13/25 14/1 14/17 14/17
be [33]
because [16] 4/17 9/1 10/7 12/22 15/1 17/16 17/25 18/23 20/15 20/24 23/18 24/4 24/5 26/5 26/15 27/6
been [10] 5/5 5/21 10/2 13/7 14/25 20/10 21/6 21/7 21/20 26/21
before [6] 1/10 6/10 9/10 12/3 15/11 17/2
beginning [2] 3/7 4/10
behalf [3] 3/11 3/14 3/18
behind [1] 17/5
behoove [1] 23/7
being [2] 16/2 20/7
believe [7] 5/19 5/24 6/12 10/7 15/11 23/18 25/16
Ben [1] 3/8
benefit [1] 20/14
BENJAMIN [1] 1/12
best [3] 13/4 25/12 28/5
better [1] 12/16
between [3] 6/5 16/6 25/2
bilateral [1] 26/4

B

BILLBROUGH [3] 2/8 2/9 3/18
billbroughfirm.com [1] 2/11
bit [1] 24/21
blatantly [1] 12/11
boilerplate [1] 20/12
bootstrap [1] 5/22
both [5] 18/18 20/25 21/17 22/4 24/6
bottom [1] 19/5
Boulevard [1] 1/14
BOYETT [3] 2/3 3/14 12/1
BRANDON [4] 1/13 3/9 11/3 11/15
broad [2] 7/2 17/24
Brosnick [1] 11/3
bsadowsky [1] 1/16
bud [1] 23/25
burden [1] 27/7
burdensome [1] 17/11
business [3] 14/15 15/23 20/19
but [32]
buy [1] 14/12
bwidlanski [1] 1/15

C

calendar [1] 16/25
call [3] 11/21 12/2 25/1
Calling [1] 3/3
can [19] 5/20 5/25 6/18 9/5 9/6 13/15 16/3 16/7 16/25 17/13 20/5 21/15 21/17 21/17 21/18 23/24 24/2 24/12 27/9
can't [3] 17/21 18/22 18/24
cannot [2] 6/21 18/20
case [11] 1/2 3/3 4/8 12/13 12/16 14/3 16/23 21/12 26/1 27/1 27/2
categories [1] 23/13
category [1] 20/17
central [1] 6/14
cert [3] 23/1 23/2 23/17
certain [1] 16/18
certainly [1] 15/21
certificate [1] 6/4
certification [2] 4/9 4/21
certify [1] 28/4
chambers [2] 3/22 11/19
chance [3] 18/13 19/11 21/1
change [2] 19/25 27/14
changed [1] 4/3
check [5] 16/15 19/18 21/4 23/23 27/11
check-in [2] 21/4 23/23
check-ins [1] 19/18
Chief [1] 3/4
choice [2] 17/16 18/2
Chris [1] 3/14
CHRISTOPHER [3] 1/17 2/3 3/10
christopher.boyettjr [1] 2/6
civil [1] 3/3
cjoyce [1] 1/20
claims [1] 26/1
class [6] 3/11 4/9 4/21 23/1 23/2 23/17
clear [2] 14/21 14/22
clearly [2] 14/16 15/17
client [5] 7/12 7/20 18/18 18/21 20/16
client's [1] 15/23
clients [1] 25/16
clients' [1] 8/9
CMA [1] 1/2
codefendant [1] 3/15
colleagues [1] 26/14
collecting [1] 26/9
colluded [2] 6/15 14/4
come [4] 6/20 18/14 24/11 26/25
comes [1] 15/8
communicate [1] 25/20
communicating [1] 3/23
communications [8] 3/25 6/5 10/22 12/5 13/17 16/5 16/6 25/2
complaint [11] 6/14 6/15 7/4 7/6 7/9 7/9 7/16 11/5 11/6 11/8 15/19
comply [1] 4/11
computers [1] 18/23
concede [1] 10/2
concern [2] 22/22 23/21
concerned [1] 4/19
concerns [1] 20/19
confer [13] 5/18 6/1 6/2 6/3 10/13 10/14 11/22 12/17 12/20 15/2 15/5 15/9 15/12
conference [1] 6/4
conferral [4] 5/20 6/19 17/25 24/25
conferrals [1] 25/7
conferred [1] 4/17
confident [1] 26/15
confidentiality [1] 20/19
confirm [1] 21/5
conjunction [1] 7/8
connected [1] 14/9
consideration [1] 5/15
consistent [1] 11/20
constraints [1] 19/1
consulting [1] 20/16
CONT'D [1] 2/1
contact [1] 11/18
contained [1] 7/15
contend [3] 7/20 9/4 11/13
control [1] 27/12
cooperative [1] 19/15
coordinate [1] 15/22
CORPORATION [2] 1/6 3/5
correct [2] 17/14 20/9
corrected [1] 26/3
cost [3] 13/18 13/21 18/10
costs [4] 13/18 13/23 15/23 15/24
could [7] 12/6 15/4 17/7 18/6 18/9 23/23 24/5
couldn't [1] 24/8
counsel [7] 3/6 5/25 6/6 7/5 7/24 9/14 12/2
count [1] 8/8
course [1] 15/3
court [5] 1/1 2/14 4/7 4/11 28/9
court's [1] 25/13
crab [1] 14/6
crabs [2] 6/17 14/13
credit [1] 19/22
CRR [2] 2/14 28/8
CSR [2] 2/14 28/8
currently [2] 8/22 9/17
custodians [10] 16/9 16/12 16/13 16/18 17/9 18/4 21/5 21/7 26/7 26/21
CV [1] 1/2

D

data [6] 13/17 15/2 16/2 17/10 18/4 26/24
date [7] 7/20 7/25 8/3 8/5 8/9 8/16 8/23
dates [2] 8/4 11/22
day [7] 8/18 9/4 9/7 9/10 9/13 16/6 16/6
days [7] 10/3 10/7 11/23 18/16 19/2 19/10 20/9
De [1] 1/14
deadlines [4] 4/11 4/12 19/24 25/13
deal [1] 12/4
dealing [1] 23/19
December [1] 8/13
decided [2] 15/1 26/23
deemed [1] 14/23
deeply [1] 4/19
defendant [9] 1/7 2/3 2/8 3/15 3/18 8/20 9/15 14/6 25/2
defendants [6] 6/15 14/4 23/8 25/4 25/17 25/19
defendants' [4] 4/4 5/1 8/21 18/2
defense [2] 18/15 26/6
defenses [1] 26/1
deficiency [2] 26/2 26/2
defined [2] 13/25 14/1
denial [1] 10/8
denied [2] 9/22 10/3
Dennis [2] 2/9 3/18
depends [2] 22/14 22/16
deprive [1] 17/19
despite [1] 20/6
determining [1] 6/23
did [16] 7/1 7/13 7/23 7/24 10/5 10/10 10/14 10/15 12/2 12/18 16/12 16/13 16/17 17/8 17/19 20/5
didn't [1] 19/21
different [2] 20/4 21/2
digital [3] 1/9 26/24 28/5
disagreement [1] 21/19
disclosure [1] 25/24
disclosures [7] 13/10 13/11 13/13 25/14 25/17 25/24 26/3
discovery [16] 1/9 4/12 4/15 5/17 7/4 7/8 8/6 8/9 8/18 9/11 11/7 11/20 11/22 15/21 16/2 16/22
discuss [8] 5/25 6/18 10/13 14/19 15/25 16/3 16/7 16/19
discussion [2] 22/20 25/11
dispute [2] 4/3 4/25
disregarded [2] 4/1 20/13
disrupting [1] 15/22
DISTRICT [2] 1/1 1/1
do [27] 4/6 5/22 6/7 7/17 9/3 14/14 15/2 15/18 16/24 16/25 18/1 18/12 18/20 19/8 19/19 20/18 22/5 22/9 22/13 22/18 23/11 23/12 24/5 24/8 24/12 25/12 26/6
docks [1] 14/9
document [3] 10/4 17/6 18/9
document's [1] 13/7
documents [17] 4/19 6/11 13/8 13/12 13/14 13/16 13/22 14/13 14/22 18/2 19/7 20/17 20/24 21/6 23/8 23/13 26/9
Does [2] 9/21 10/25
doesn't [2] 18/10 27/11
doing [1] 19/19
don't [27] 4/14 4/18 4/18 4/21 6/22 8/3 8/23 10/3 12/7 12/14 12/22 17/2 17/6 17/9 18/23 18/24 19/6 19/17 20/8 21/14 22/23 23/4 23/25 24/22 24/23 25/22 27/2
done [4] 18/6 20/7 21/11 27/6
Dopico [2] 2/9 3/19
double [1] 15/23
down [1] 20/24
downloaded [1] 16/3
downstream [3] 6/11 14/1 14/10
draft [2] 16/11 20/13
due [17] 4/9 5/8 7/5 7/20 7/25 8/3 8/5 8/10 8/14 8/18 9/5 9/7 10/2 10/7 21/3 23/1 23/3

## E

earlier [5] 11/15 11/17 14/18 24/8 25/6
ECF [1] 8/22
efficiently [2] 15/18 16/1
either [7] 14/7 15/14 20/17 21/4 23/14 24/6 27/9
else [1] 26/11
email [10] 8/6 8/19 10/10 10/25 11/2 11/9 11/15 11/17 16/13 24/20
emails [2] 3/22 7/23
employees [1] 16/6
end [2] 11/18 24/22
engage [1] 15/8
engineer [1] 9/4
enough [2] 20/20 27/10
entities [1] 13/24
entitled [1] 28/6
Ernest [2] 15/20 15/21
ESI [8] 16/10 16/17 16/22 21/10 21/16 21/20 22/9 26/23
ESQ [6] 1/12 1/13 1/17 2/3 2/3 2/8
essentially [2] 9/3 25/3
et [4] 1/3 1/6 3/4 3/5
even [6] 12/12 13/9 16/1 17/7 18/12 23/20
event [1] 12/13
every [2] 8/25 14/14
exact [3] 8/4 8/23 26/24
exactly [1] 25/3
example [3] 13/15 20/16 23/12
examples [1] 21/8
excuse [1] 11/16
exist [1] 7/1
existing [2] 11/7 16/3
exists [1] 20/18
expectation [1] 27/5
expensive [1] 20/25
experience [1] 23/14
expert [5] 4/21 23/1 23/2 23/8 23/14
experts [1] 4/9
explained [3] 7/5 11/4 14/11
explanation [1] 4/23
expresses [1] 11/13
extend [1] 10/17
extension [3] 10/3 10/11 10/13
extent [3] 4/2 5/8 27/6

## F

fact [2] 14/24 14/25
failed [1] 7/12
fall [1] 14/23
familiar [1] 25/8
far [1] 17/5
fault [1] 24/23
February [1] 28/8
few [1] 13/3
fewer [1] 20/24
figure [1] 9/5
figuring [1] 9/4
file [3] 7/20 12/13 21/15
filed [11] 5/16 7/9 7/14 8/2 8/3 8/4 8/14 8/17 9/10 12/19 27/3
financial [1] 13/20
find [1] 5/1
finding [1] 4/4
fine [3] 19/12 23/22 24/12
firm [2] 2/9 19/15
first [4] 8/19 9/14 18/20 21/4
Fisheries [6] 2/3 3/15 8/20 9/15 14/8 16/7
Fisheries' [2] 14/15 15/3
fishermen [5] 6/16 14/4 25/3 25/15 25/19
fix [2] 17/21 19/10
fixing [1] 25/3
FL [4] 1/14 1/19 2/5 2/10
flag [1] 24/19
FLEISCHER [1] 1/10
FLOCH [2] 1/18 3/11
FLORIDA [2] 1/1 1/4
focus [1] 14/19
following [2] 3/2 22/25
foregoing [1] 28/4
forgot [2] 24/11 24/11
format [1] 26/24
Fort [1] 1/19
forth [2] 8/21 9/16
forthcoming [1] 17/20
forward [2] 20/4 21/2
frame [1] 16/4
Frankly [1] 5/19
Friday [6] 4/18 5/6 8/17 24/5 24/12 27/11
front [3] 8/4 9/24 22/24
fuel [1] 13/18
further [1] 15/8

## G

gate [2] 17/3 21/9
general [3] 12/23 18/5 20/12
get [8] 4/21 12/10 17/1 19/5 20/6 22/2 25/12 27/12
gets [1] 12/3
getting [1] 17/6
give [5] 8/11 8/25 11/24 18/16 19/10
given [1] 19/24
gmail.com [2] 2/15 28/9
go [7] 3/21 14/11 15/2 18/22 22/24 23/21 24/18
goal [1] 19/16
goes [1] 17/10
going [10] 16/21 16/24 16/25 18/10 19/15 19/25 21/10 21/23 24/21 26/5
good [5] 3/8 3/13 3/17 24/3 27/10
goods [1] 13/18
got [2] 4/17 9/5
greatest [1] 19/13
gross [1] 13/19
ground [1] 27/2
grounds [1] 20/14
guess [2] 4/2 23/11
guidance [2] 19/16 19/17
guys [3] 19/19 19/23 26/5

## H

had [9] 7/14 8/2 13/25 14/1 15/1 15/4 15/11 18/12 22/22
halfway [1] 4/20
Hamilton [2] 15/20 15/21
handle [3] 24/7 26/7 26/15
Hang [1] 17/15
happen [1] 12/18
happening [1] 24/8
happy [6] 6/7 14/18 16/19 23/10 25/8 25/9
has [11] 4/3 9/23 10/2 14/8 18/21 19/24 20/18 20/21 23/14 26/11 26/22
hasn't [1] 6/6
have [56]
haven't [6] 4/17 15/1 15/20 17/8 18/12 21/24
having [4] 7/10 15/23 18/6 25/11
hear [1] 20/4
heard [1] 19/9
hearing [13] 1/9 3/23 5/14 5/23 7/18 11/20 11/22 12/4 12/7 15/11 15/13 27/5 27/8
hearings [1] 17/2
held [1] 3/2
help [1] 4/13
her [1] 25/12
here [8] 3/16 14/20 17/8 18/24 19/22 20/2 20/9 26/13
here's [2] 16/24 19/10
hereby [1] 28/4
Highlight [1] 11/12
highlights [1] 12/15
Honor [12] 3/8 3/13 5/12 6/1 6/20 7/3 9/23 12/25 21/14 22/25 25/5 27/18
Honor's [1] 19/16
HONORABLE [1] 1/10
hope [1] 19/13
house [3] 22/5 22/7 22/10
how [5] 6/25 9/5 11/7 16/13 25/3

## I

I'll [2] 24/18 24/19
I'm [21] 4/23 7/10 8/16 8/17 8/24 8/24 9/3 10/1 11/2 11/24 14/7 15/6 17/23 19/15 20/7 20/8 21/8 25/18 25/21 26/5 26/20
I've [1] 18/13
ice [1] 13/19
idea [1] 23/12
identified [7] 16/9 17/9 21/6 23/14 25/15 25/19 26/21
identify [6] 16/12 16/12 16/14 17/8 20/17 23/7
identifying [1] 18/4
if [30]
immediately [1] 22/3
implicates [1] 20/19
important [2] 21/9 23/17
imposed [1] 4/12
in [59]
in-house [3] 22/5 22/7 22/10
in-person [1] 11/21
INC [2] 1/3 3/4
inclination [1] 18/16
inclined [1] 18/12
including [3] 13/17 13/18 13/20
incur [1] 15/23
inform [1] 25/20
information [1] 25/25
informed [1] 18/18
informing [1] 18/20
initial [7] 13/9 13/11 13/12 25/14 25/17 25/23 26/3
ins [1] 19/18
insistence [1] 6/22
instance [1] 16/2
instead [2] 7/17 24/13
intelligible [1] 11/4
intend [2] 25/25 26/24
interest [1] 19/6
intervals [1] 18/14
interviewed [1] 26/21
interviewing [1] 26/8
irrelevant [3] 6/12 14/10 19/7
is [80]
isn't [1] 27/9
isolated [1] 21/7

I

issue [7] 5/13 5/24 6/14 7/16 12/3 14/20 18/20
issues [7] 5/20 5/23 6/18 6/20 6/21 23/22 23/24
it [59]
it's [7] 5/15 6/8 9/23 20/7 21/25 23/3 26/25
its [1] 14/9

J

Jackie [1] 3/13
JACQUELINE [1] 2/3
jacqueline.arango [1] 2/6
January [15] 1/5 4/13 7/9 8/14 8/17 9/8 9/19 9/22 10/6 10/15 11/2 11/16 11/17 24/24 25/9
jemancari [2] 2/15 28/9
Joanne [3] 2/14 28/8 28/8
joint [1] 24/7
JOYCE [2] 1/17 3/10
JR [1] 2/3
JUDGE [26] 1/10 3/4 3/17 4/6 4/8 5/3 11/19 19/8 19/12 19/20 19/24 20/1 21/21 22/8 22/14 22/22 23/6 23/10 23/16 23/21 24/9 25/5 25/16 25/21 26/13 27/13
judge's [1] 12/3
jumps [1] 21/24
just [22] 5/21 6/6 8/11 8/16 11/24 12/14 12/15 13/4 15/25 16/15 17/16 18/3 18/10 18/24 19/5 19/18 19/22 20/7 20/13 23/4 23/24 27/1

K

keep [2] 19/22 20/23
Key [6] 8/20 9/15 14/8 14/14 15/3 16/6
Keys [2] 2/3 3/15
kind [1] 26/20
kinds [1] 26/19
know [10] 6/1 8/23 9/12 11/21 18/24 19/21 20/22 23/15 26/7 27/4
knowing [1] 18/1
KOZYAK [2] 1/13 3/9
kttlaw.com [2] 1/15 1/16

L

labor [2] 13/19 13/23
lack [1] 27/7
laid [2] 15/17 22/22
language [1] 11/12
large [1] 21/23
last [2] 5/7 16/11
late [2] 12/12 12/12
later [3] 10/4 11/19 17/21
Lauderdale [1] 1/19
LAUREN [1] 1/10
layering [1] 22/19
least [5] 6/5 8/1 12/5 25/23 26/22
ledgers [1] 13/21
Leon [1] 1/14
less [3] 17/16 20/25 26/5
let [3] 3/22 11/20 20/22
let's [3] 13/3 16/15 20/23
letters [1] 12/17
level [1] 17/1
lift [1] 24/22
like [4] 6/10 14/18 18/2 21/1
limit [1] 14/19
limited [2] 3/23 16/4
limits [1] 18/21
line [1] 19/5
lines [1] 21/22
links [1] 26/25
list [1] 16/18
literally [1] 19/18
litigation [1] 18/10
little [1] 24/21
LLP [3] 1/13 2/4 3/14
lobster [2] 6/16 14/5
lobsters [1] 14/12
local [1] 3/25
log [1] 20/15
logistically [1] 27/1
longer [1] 20/18
look [2] 18/2 25/4
looking [3] 8/16 20/3 26/20
lose [1] 23/25
loss [1] 13/21
lot [5] 5/20 12/23 18/5 19/17 26/6
LOUIS [1] 1/10
Louis' [1] 11/19

M

made [2] 5/5 18/1
MAGISTRATE [2] 1/10 11/18
make [8] 3/22 10/1 12/16 15/22 15/25 21/3 24/3 26/17
makes [1] 9/6
making [1] 24/3
Mancari [3] 2/14 28/8 28/8
manner [1] 26/22
many [1] 16/13
Marathon [1] 14/8
March [2] 4/10 23/3
margin [1] 13/21
material [1] 25/25
materials [4] 3/24 11/10 20/6 25/13
matter [1] 28/6
may [4] 18/22 21/12 22/13 27/1
maybe [3] 7/19 20/7 27/2
MAYS [2] 1/18 3/10
me [14] 3/22 8/4 8/11 9/3 11/12 11/16 11/24 12/1 18/13 19/9 20/22 21/2 21/24 24/10
mean [11] 10/25 17/13 18/10 18/21 19/2 19/18 19/21 20/3 24/23 25/16 25/17
meaningful [2] 18/17 26/9
measure [1] 17/25
mechanics [1] 27/4
meet [16] 5/18 5/19 5/25 6/2 6/3 6/19 10/12 10/14 11/22 12/17 12/20 14/9 15/1 15/5 15/9 15/12
met [1] 4/17
metrics [2] 26/19 26/20
Miami [4] 1/4 1/14 2/5 2/10
might [2] 14/6 19/2
million [1] 19/7
minute [1] 11/24
minutes [1] 12/10
misnumbered [3] 23/19 24/15 25/1
misnumbering [1] 6/9
moment [1] 8/11
moot [4] 5/23 6/23 6/25 12/7
mooted [1] 12/3
more [3] 6/1 6/5 24/22
most [3] 13/1 21/9 23/17
motion [17] 7/14 7/15 8/1 8/2 8/3 8/4 8/7 8/14 8/17 8/21 8/23 9/10 9/16 9/21 10/2 10/8 27/3
move [2] 10/3 19/15
moving [1] 19/23
Mr. [1] 12/1
Mr. Boyett [1] 12/1
Ms. [6] 5/11 19/13 20/3 22/21 24/19 25/11
Ms. Arango [6] 5/11 19/13 20/3 22/21 24/19 25/11
much [2] 14/20 24/8
my [12] 8/8 10/21 10/22 18/16 19/17 20/9 23/21 23/22 23/22 26/14 27/5 28/5

N

nailed [1] 25/5
names [1] 16/18
necessity [1] 12/7
need [15] 4/7 4/11 12/16 16/5 16/7 17/2 17/5 19/5 19/17 19/18 23/15 25/13 26/7 26/7 27/3
needed [2] 7/5 17/7
needs [1] 16/3
negotiate [1] 25/6
NEIMAN [2] 1/18 3/10
net [1] 13/19
next [7] 11/17 11/23 20/13 22/24 23/21 23/23 27/11
nip [1] 23/25
nmfalawfirm.com [1] 1/20
no [21] 1/2 3/3 5/4 8/22 10/8 11/4 11/19 12/11 12/20 13/14 13/14 13/14 13/16 14/25 20/14 20/17 23/22 25/1 25/18 25/20 26/25
none [2] 18/6 18/8
not [33]
note [2] 3/6 25/23
nothing [1] 20/18
notice [3] 5/14 5/23 7/18
noticed [3] 4/25 5/21 15/10
noting [1] 20/14
now [5] 5/23 5/24 12/15 15/16 21/25
number [4] 5/17 6/13 6/20 7/6
numbered [1] 6/8

O

object [4] 10/12 10/17 20/14 22/19
objected [1] 8/6
objection [11] 7/25 13/1 14/1 14/10 14/11 14/18 14/20 17/11 18/22 20/12 20/12
objections [43]
obligation [1] 26/4
observation [1] 3/22
obvious [1] 20/8
obviously [5] 4/16 22/2 22/14 26/4 26/21
occurred [1] 6/6
off [1] 27/2
Oh [1] 22/7
OK [38]
on [55]
one [3] 6/5 8/11 13/4
ones [2] 23/19 24/19
only [3] 22/22 23/21 25/24
open [1] 22/20
opportunity [4] 8/25 15/11 17/20 20/22
opposed [2] 15/15 23/23
or [30]
order [6] 4/4 5/1 6/23 7/7 9/3 26/8
other [5] 3/24 5/4 17/3 21/8 27/3
others [1] 23/9
otherwise [2] 19/21 21/2
our [31]

O

out [12] 7/3 9/4 9/5 15/17 15/19 17/3 21/8 21/24 22/23 23/4 26/14 27/12
outlined [3] 5/16 6/10 14/16
over [2] 15/2 15/2
overhead [2] 13/18 13/23

P

p.m [2] 11/3 26/12
pace [1] 4/19
packaging [1] 13/19
page [1] 18/9
pages [2] 1/7 7/7
paid [2] 6/16 14/4
paper [5] 4/11 4/14 4/18 4/22 21/6
PARADISE [2] 1/3 3/4
paragraphs [1] 7/6
parameters [1] 16/8
part [1] 8/2
participate [2] 25/9 25/10
particularly [1] 26/6
parties [2] 6/3 25/6
party [1] 14/7
path [2] 20/4 21/2
patrons [2] 14/12 15/3
Pause [7] 7/22 8/12 8/15 10/9 11/14 11/25 16/16
pending [2] 8/22 9/17
perhaps [1] 12/15
period [1] 4/20
person [3] 11/21 17/3 17/4
personal [1] 6/5
pertain [1] 6/13
pick [1] 13/4
picked [1] 12/13
piece [1] 4/10
place [1] 17/1
placed [1] 19/3
plaintiff [6] 1/4 1/12 3/7 3/11 15/8 27/9
plaintiffs [9] 5/22 7/13 10/5 10/10 10/17 15/10 15/17 15/20 16/20
plaintiffs' [10] 4/3 5/25 7/24 8/19 9/14 11/8 11/13 12/2 18/19 20/21
plan [2] 19/20 22/22
planned [1] 11/18
pleadings [1] 20/8
please [4] 3/6 8/11 11/20 20/21
PLLC [1] 1/18
point [6] 7/3 12/10 15/17 15/19 21/19 23/13
Ponce [1] 1/14
poorly [1] 22/24
portion [1] 20/23
position [8] 7/11 8/21 9/1 9/16 9/25 19/3 21/13 24/24
possible [1] 9/23
Practice [1] 22/15
predicate [1] 15/7
prepared [1] 25/21
preparedness [1] 17/2
presently [1] 21/16
pretty [1] 14/20
price [2] 14/5 25/3
prices [1] 6/16
pricing [2] 23/19 23/20
prior [3] 8/3 8/5 25/9
prioritize [1] 23/9
privilege [2] 20/15 20/15
probably [10] 5/20 6/9 6/19 17/24 18/14 18/18 22/5 23/17 23/18 24/6
problem [2] 21/25 26/25
procedures [1] 11/20
proceedings [1] 3/2
process [2] 25/7 25/8
processing [1] 13/23
produce [1] 26/24
produced [5] 13/7 13/8 14/24 14/25 20/24
producing [1] 24/4
production [10] 4/20 8/20 9/15 13/16 15/14 17/6 18/15 19/6 26/22 27/11
products [4] 13/20 14/5 16/5 23/20
profit [1] 13/21
profits [1] 13/19
progress [5] 5/4 5/6 5/8 5/9 26/18
prompted [1] 24/10
proper [5] 5/19 5/25 6/19 15/1 15/12
properly [1] 7/7
proposed [3] 3/11 21/20 21/21
proposing [1] 25/4
protocol [7] 16/10 16/17 21/10 21/16 21/17 21/20 26/23
provide [4] 13/3 16/4 18/17 21/17
provided [4] 7/24 13/11 13/12 16/17
providing [2] 3/24 7/17
pulling [1] 26/9
purchase [1] 6/16
purchasers [2] 6/12 14/11
purchasers' [1] 14/10
put [1] 16/25
putting [1] 23/4

Q

question [6] 4/24 5/12 5/13 8/8 23/22 24/10
questioned [1] 21/7
questions [1] 20/5

R

raise [1] 20/21
raised [1] 8/7
rather [2] 17/16 17/19
read [1] 18/8
reading [2] 11/1 11/2
ready [1] 5/18
real [2] 18/22 19/4
reality [1] 17/23
really [9] 5/4 7/10 8/25 11/4 12/23 15/2 18/13 18/19 19/6
reaped [1] 14/6
reason [1] 27/10
reasonable [1] 21/15
receive [1] 4/10
received [1] 11/5
recognized [1] 6/24
record [1] 3/7
recording [2] 1/9 28/6
red [1] 21/22
refer [2] 13/15 20/11
reflecting [2] 13/17 13/22
regarding [1] 25/3
reiterated [2] 8/20 9/16
related [4] 11/7 13/24 14/14 15/13
relating [1] 13/19
Relativity [3] 22/6 22/7 22/11
relevant [3] 13/20 14/5 16/5
relied [1] 8/7
relief [2] 4/4 4/7
rely [1] 25/25
remains [2] 4/4 4/25
remotely [1] 17/1
report [2] 4/21 23/1
Reporter [2] 2/14 28/9
represented [1] 12/3
representing [1] 10/19
request [13] 3/23 4/4 5/5 6/11 6/23 8/19 9/15 11/19 12/20 13/16 20/11 20/23 25/2
requested [1] 16/2
requests [11] 4/16 5/18 6/13 7/2 8/10 11/7 17/24 18/1 23/16 24/13 25/6
require [2] 16/18 25/24
required [2] 3/24 4/12
requires [2] 6/2 6/4
resist [1] 7/11
resistance [1] 12/14
resolve [1] 5/20
respect [3] 19/13 25/14 27/7
respond [6] 7/7 7/13 10/5 10/12 10/15 11/5
respond/object [1] 10/12
responded [2] 9/13 11/18
responding [1] 12/6
response [5] 8/19 9/14 12/6 13/9 20/11
responses [12] 4/12 4/15 5/7 5/16 7/4 7/8 8/18 10/6 10/7 12/11 21/3 21/16
responsive [2] 4/24 14/23
restaurant [5] 14/8 14/12 14/12 15/3 15/4
revenues [1] 13/18
reverse [1] 9/4
review [5] 7/5 16/6 16/7 16/8 22/13
revolving [1] 16/25
RFP [1] 25/20
RFPs [4] 5/2 6/8 7/25 23/13
Richard [1] 11/3
right [16] 5/13 7/4 9/19 9/21 16/4 16/5 16/21 16/24 17/16 19/23 20/22 21/25 22/17 23/25 25/7 26/19
ripe [2] 5/14 5/21
RPR [2] 2/14 28/8
Rule [1] 6/2
rules [1] 3/25
running [1] 18/15

S

SADOWSKY [2] 1/13 3/9
said [8] 6/10 10/12 10/14 12/17 14/18 18/13 21/1 24/13
sales [5] 6/12 14/1 14/6 14/10 15/2
same [1] 11/9
satisfaction [1] 25/19
satisfy [1] 25/13
say [6] 12/7 12/9 12/23 17/16 20/22 26/5
saying [6] 8/19 12/15 15/7 17/21 23/11 27/10
says [1] 21/25
schedule [1] 18/14
scheduled [1] 7/18
scope [4] 13/25 14/23 15/14 27/7
SE [1] 1/18
SEAFOOD [4] 1/6 2/9 3/5 3/18
search [4] 16/7 21/11 22/19 26/9
searches [1] 21/6
seat [1] 3/21
see [8] 9/5 16/15 17/3 18/15 21/2 26/11 27/3 27/14
seeing [3] 8/17 19/7 20/7
seeking [2] 5/1 5/3
seems [2] 7/11 15/7
seen [1] 21/24

S

Self [1] 4/13
Self-help [1] 4/13
sense [6] 9/6 10/1 15/22 15/25 17/9 20/6
sensitive [1] 19/1
sent [4] 8/5 8/18 16/11 21/22
serve [7] 7/1 7/12 7/23 7/24 10/4 10/6 18/3
served [10] 4/16 5/7 6/25 7/4 8/13 9/18 10/1 15/20 15/21 20/10
set [5] 4/8 8/21 9/16 18/13 21/3
seven [4] 18/16 19/2 19/10 20/9
Seventh [1] 2/4
she [1] 19/14
ship [1] 17/17
should [2] 3/23 26/3
side [3] 20/18 22/13 26/6
significant [1] 26/17
single [2] 4/10 13/6
sit [1] 18/24
so [41]
sold [1] 13/18
some [7] 6/8 6/10 6/21 17/25 17/25 23/12 26/22
someone [1] 18/19
something [1] 17/21
sorry [2] 11/24 17/24
sound [1] 9/21
source [3] 3/24 11/10 20/6
Southeast [1] 2/4
SOUTHERN [1] 1/1
speaking [3] 18/18 18/18 24/6
special [1] 20/19
specific [13] 5/17 6/3 6/10 6/13 6/21 7/2 13/1 14/17 14/21 18/17 18/22 20/11 20/20
specifically [2] 6/2 8/6
specificity [1] 27/8
spiny [2] 6/16 14/5
spiral [1] 18/11
stand [1] 5/18
start [2] 4/2 18/3
started [3] 17/6 19/6 26/22
stated [3] 7/14 7/25 9/14
statements [2] 13/20 13/21
STATES [2] 1/1 1/10
stating [1] 8/6
stay [16] 7/14 7/15 8/1 8/2 8/3 8/4 8/7 8/14 8/17 8/22 8/23 9/10 9/17 9/22 10/2 10/8
still [3] 4/6 4/13 5/14
stone [3] 6/17 14/6 14/13
stop [1] 21/13
streamline [1] 16/1
Street [1] 2/4
structured [1] 13/17
subject [2] 5/14 15/13
substantiate [2] 17/7 20/21
substantiated [2] 18/6 18/9
substantive [1] 5/23
suggesting [1] 20/4
suggestion [1] 20/9
suggests [1] 10/16
sure [7] 4/23 14/7 15/6 19/15 21/8 24/3 26/14
SW [1] 2/9

T

TAILS [2] 1/3 3/4
take [2] 19/22 24/21
talk [1] 15/4
talking [1] 21/13
TAR [2] 22/13 22/20
team [4] 18/19 20/21 21/23 25/12
tell [2] 19/9 21/2
telling [1] 12/1
Ten [1] 10/3
terms [6] 16/8 17/6 21/11 22/20 24/24 26/10
Terrace [1] 2/9
test [1] 18/5
tested [1] 26/22
testing [1] 21/11
tethered [1] 12/12
than [3] 6/1 11/19 24/8
Thank [6] 3/12 3/20 4/6 27/13 27/16 27/18
that [176]
that's [8] 5/5 5/5 16/2 19/12 20/12 21/15 21/20 24/12
their [3] 5/7 9/14 24/4
them [13] 4/17 7/1 10/6 12/13 14/19 18/16 19/10 20/21 21/21 22/2 23/25 24/18 26/8
then [16] 6/20 8/5 9/24 10/7 12/4 12/14 15/8 17/9 20/21 21/22 22/24 22/25 23/4 26/5 26/14 27/2
there [18] 5/4 6/8 6/12 6/20 9/5 11/4 12/4 12/11 12/20 17/1 20/13 21/8 21/19 23/5 23/24 24/19 26/2 26/25
there's [3] 6/7 21/10 26/2
Thereupon [1] 2/16
these [12] 5/20 6/18 8/9 10/21 12/23 14/5 14/13 17/20 21/10 23/20 25/6 26/8
they [22] 5/7 5/8 6/11 7/1 7/17 8/13 8/14 9/1 9/5 9/7 10/2 10/11 12/12 14/25 15/20 17/24 18/21 18/23 20/13 21/22 25/20 26/3
they're [4] 19/4 19/25 24/4 27/10
things [3] 21/9 21/11 22/24
think [30]
third [1] 14/7
third-party [1] 14/7
this [28] 4/8 5/21 7/16 7/19 10/4 11/9 12/3 12/16 13/15 14/3 14/9 14/20 15/10 15/18 16/1 16/22 16/23 18/5 18/10 19/10 20/18 20/24 21/1 21/19 23/13 24/21 24/24 27/16
those [11] 4/12 4/17 5/18 7/2 12/5 16/19 20/19 21/9 23/8 23/19 24/19
three [1] 22/25
THROCKMORTON [2] 1/13 3/10
through [5] 4/20 21/24 22/6 24/18 25/6
Thursday [2] 11/16 24/7
tight [1] 4/7
time [19] 4/20 7/17 9/17 10/3 10/11 10/13 10/17 10/22 10/23 12/4 12/16 13/25 16/4 19/1 20/11 23/20 24/3 24/6 27/15
timeline [1] 24/1
timelines [1] 4/7
timely [5] 7/12 7/14 9/2 10/1 18/3
times [1] 15/23
timing [2] 15/15 22/23
today [3] 11/21 17/7 25/10
together [2] 24/4 26/9
told [1] 10/6
tomorrow [1] 11/19
took [1] 12/9
top [1] 22/20
topics [1] 16/19
towards [1] 19/16
town [1] 26/14
TRANSCRIBED [2] 1/9 2/14
transcription [1] 28/5
TROPIN [2] 1/13 3/9
trouble [1] 7/10
true [2] 13/6 24/16
truncated [1] 24/1
try [4] 7/19 14/19 16/1 20/5
trying [6] 5/22 8/24 8/25 9/3 10/1 15/18
Tuesday [1] 21/4
two [5] 5/7 11/22 14/5 15/23 18/14
two-week [1] 18/14
type [1] 16/1

U

under [2] 4/7 21/6
understand [7] 6/22 8/24 8/25 9/25 12/14 15/6 24/22
understanding [5] 7/11 10/20 10/21 10/22 12/5
understood [2] 11/6 12/8
undertake [1] 18/3
unexplained [1] 12/12
UNITED [2] 1/1 1/10
Unless [1] 26/11
unsolicited [1] 3/25
until [6] 7/16 10/17 11/5 18/14 22/25 27/3
untimely [4] 4/5 5/2 6/24 6/24
up [3] 18/15 27/1 27/4
upon [2] 14/4 21/17
us [6] 7/17 11/21 12/9 15/25 21/22 23/17
use [2] 12/16 24/3
uses [1] 22/10
using [1] 22/4

V

vacuum [2] 18/1 18/25
vendor [2] 22/9 22/10
vendors [1] 22/4
very [11] 4/7 5/17 7/2 7/2 14/16 14/20 14/21 15/17 17/24 18/22 19/2
violate [1] 3/25
volume [4] 17/10 18/4 22/14 22/16
voluminous [1] 5/17

W

wait [1] 17/15
waiting [1] 7/16
waived [4] 4/5 5/2 9/1 19/3
want [9] 12/7 15/2 17/15 19/9 19/22 20/4 24/3 25/1 27/10
was [29]
way [6] 7/19 11/4 16/22 21/6 23/12 25/12
we [130]
we'll [2] 12/4 16/7
we're [6] 4/20 6/7 15/18 20/2 22/20 23/10
we've [5] 5/16 6/10 8/20 14/16 16/11
Wednesday [2] 21/5 24/7
week [12] 5/7 16/11 18/14 21/4 22/24 22/25 23/22 23/23 23/24 24/1 24/13 27/14
weeks [2] 5/8 22/25
well [15] 3/21 5/6 6/8 7/1 7/13 10/5 11/22 13/5 15/10 15/16 16/10 17/13 19/3 20/1 22/18

W

well-placed [1] 19/3
were [21] 3/2 4/16 5/8 7/4 7/15 7/24 8/1 8/9 8/13 8/14 8/18 9/1 9/5 9/7 10/2 10/7 11/7 14/23 25/8 25/15 25/16
what [32]
what's [1] 5/21
whatever [3] 21/12 25/1 27/1
when [4] 4/25 15/7 17/25 23/1
where [5] 12/2 15/17 17/1 17/5 24/24
whether [4] 4/24 5/13 6/15 20/6
which [21] 4/3 4/24 5/13 6/15 8/22 8/22 9/17 10/15 10/25 11/15 11/17 14/11 16/10 16/11 18/6 18/17 21/17 22/23 23/13 23/13 23/18
while [2] 4/16 19/1
whittling [1] 20/23
who [3] 3/15 25/25 26/8
whole [1] 12/23
wholesalers [1] 14/7
whom [2] 25/20 25/25
why [3] 20/2 20/5 27/9
WIDLANSKI [2] 1/12 3/9
will [19] 4/2 7/19 15/8 17/3 18/17 19/19 20/20 21/8 21/13 22/2 22/5 22/23 23/15 24/11 26/11 26/13 26/13 26/14 26/17
withdraw [1] 20/23
within [5] 7/15 10/7 14/23 16/4 26/23
without [2] 18/1 18/20
witnesses [3] 25/15 25/24 26/8
wonderful [2] 19/14 19/14
work [7] 18/7 19/19 20/7 21/17 21/18 26/6 27/6
workable [1] 16/22
working [1] 21/16
would [35]
wouldn't [1] 19/24
wrong [3] 17/12 19/10 20/8

Y

years [1] 15/3
yes [14] 5/3 9/9 9/20 9/23 9/24 10/24 11/11 11/17 16/12 22/8 23/3 23/6 24/5 24/12
yet [2] 4/10 13/7
you [102]
you're [7] 5/1 14/3 14/7 17/13 20/17 20/22 25/7
you've [3] 13/2 26/23 27/6
your [55]
yourself [2] 17/20 18/20